BRYAN SCHWARTZ LAW
Bryan J. Schwartz (SBN 209903)
bryan@bryanschwartzlaw.com
Rachel Terp (SBN 290666)
rachel@bryanschwartzlaw.com
1330 Broadway, Suite 1630
Oakland, CA 94612
Telephone.: (510) 444-9300
Facsimile: (510) 444-9301
Email: bryan@bryanschwartzlaw.com
       rachel@bryanschwartzlaw.com

*Attorneys for Representative Plaintiff and the Class*

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SEAN MAR, individually, on behalf of others similarly situated, and on behalf of the general public,<br><br>Plaintiff,<br><br>v.<br><br>GENUINE PARTS COMPANY, NAPA AUTO PARTS, and DOES 1-10, inclusive,<br><br>Defendant(s). | Case No.: 2:15−CV−01405−MCE−AC<br><br>**NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION FOR AMENDED SETTLEMENT APPROVAL**<br><br>**Hon. Morrison C. England, Jr.**<br><br>Date: April 6, 2017<br>Time: 2:00pm<br>Place: Courtroom 7 |

NOTICE OF MOTION AND MOTION TO THE COURT AND ALL INTERESTED PARTIES:

**PLEASE TAKE NOTICE** that a hearing will be held on Plaintiff's Unopposed Motion for Amended Settlement Approval on April 6, 2017 at 2:00 p.m. in the Courtroom of the Honorable Morrison C. England, Jr. located at 501 I Street, Courtroom 7, Sacramento, CA 95814. At the hearing, representative Plaintiff Sean Mar (hereinafter the "Plaintiff," "Named Plaintiff," or "Class Representative"), through his attorneys and on behalf of all other Executive Management Trainees ("EMTs") similarly situated who have opted to participate, will and hereby does move the Court to: grant final approval of the Parties' amended collective action, common fund Settlement in the amount of $775,000 under Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), award an enhancement payment of $7,500 to the Named Plaintiff, award an enhancement payment of $2,500 to each of the three pre-settlement opt-ins, approve attorneys' fees of one-quarter of the common fund, or $193,750, and costs of $7,225.90, approve an allocation of $3,000 for claims under the California Private Attorneys General Act ("PAGA"), Labor Code section 2698, *et seq.*, and enter judgment based on the Amended Settlement Agreement.

On January 6, 2017, the Court denied settlement approval based upon attorneys' fees in the original agreement that were greater than the Ninth Circuit's 25% benchmark. Accordingly, the Parties amended the Settlement to limit fees to this benchmark amount. As noted in the original approval motion, 94% of eligible EMTs nationwide affirmatively chose to participate in the FLSA Settlement. Those participating will now recover even more than in the original Settlement they accepted: an average of $5,923.13 each. Based upon the Settlement, Defendant has already reclassified the EMT position as non-exempt and has already paid $63,000 in overtime to the newly non-exempt EMTs, in just over eight months, suggesting the Settlement will yield more than $450,000 over the first five years of the reclassification.

EMTs not participating waive no claims in connection with this settlement. Plaintiffs make this unopposed Motion on the grounds that this settlement is a fair and reasonable resolution of a bona fide dispute. The Motion is based on this Notice of Motion and the Memorandum of Points and Authorities in Support; the Declaration of Rachel M. Terp, Esq (Terp Decl.) in Support of this Motion, the Declaration of Patricia E. Simon (Simon Decl.), the Declaration of Janet M. Thomas

(Supplemental Thomas Decl.), and the Declaration of Diane L. Webb (Webb Decl.); and the documents submitted in support thereof, including the Amended Settlement Agreement and its exhibits; any oral argument of counsel; and the complete files, records, and pleadings in this case, including Plaintiff's August 31, 2016 Motion for Settlement Approval. A Proposed Order is submitted herewith.

DATED: March 9, 2017            BRYAN SCHWARTZ LAW

By: __/s/ *Bryan J. Schwartz*__
Bryan J. Schwartz (SBN 209903)
*Attorneys for Representative Plaintiff and the Class*

**TABLE OF CONTENTS**

I. INTRODUCTION ..................................................................................................... 1

II. BACKGROUND ....................................................................................................... 3

    A. The Parties Litigated and Mediated Plaintiffs' Class and Collective Claims .... 3

    B. The Initial Settlement Agreement Achieved a Very High Opt-In Rate and a Valuable Reclassification ................................................................................. 4

    C. The Court Denied Plaintiffs' Initial Motion for Settlement Approval Based Upon Fees Requested Over the Ninth Circuit Benchmark. ............................ 5

    D. The Amended Settlement Agreement Complies with the Court Order. .......... 5

III. THE COURT SHOULD GRANT APPROVAL ....................................................... 6

    A. The Legal Standard Favors Approval for a Fair and Reasonable Settlement of a Bona Fide Dispute ......................................................................................... 6

    B. The Requested Attorneys' Fees are Appropriate. ........................................... 7

        1. The Result Obtained is Excellent. ......................................................... 7

        2. Risk, Expense, Complexity, and Likely Duration of Further Litigation ... 9

        3. Plaintiff's Counsel Bore the Risk In Bringing This Case ...................... 10

        4. The Lodestar Cross-Check Favors the Requested Award .................. 10

    C. The Requested Costs Sought Are Appropriate ............................................. 11

    D. The Enhancements Requested are Appropriate. .......................................... 12

    E. The Requested *Cy Pres* Beneficiary is Appropriate ...................................... 13

    F. The PAGA Allocation is Appropriate ............................................................. 13

IV. CONCLUSION ....................................................................................................... 14

# TABLE OF AUTHORITIES

**Federal Cases**

*Adoma v. University of Phoenix, Inc.*, 913 F. Supp. 2d 964
    (E.D. Cal. 2012) ............................................................................................................. 7, 11

*Alila-Katita et al v. U.S. Bank National Association*, No. 4:16-cv-3950
    (N.D. Cal. Jul. 13, 2016) ....................................................................................................... 10

*Ambrosino v. Home Depot U.S.A., Inc.*, No. 11cv1319 L (MDD), 2014 WL 3924609
    (S.D. Cal. 2014) ....................................................................................................................... 9

*Asare v. Change Group of New York, Inc.*, 2013 WL 6144764
    (S.D.N.Y. Nov. 18, 2013) ........................................................................................................ 12

*Barbosa v. Cargill Meat Sol. Corp.*, 297 F.R.D. 431 (E.D. Cal. 2013) ................................. 7, 10

*Bond v. Ferguson Enterprises, Inc.*, 2011 WL 2648879 (E.D. Cal. June 30, 2011) ................. 7

*Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156 (2012) ........................................ 9

*Covillo v. Specialties Café*, 2014 WL 954516 (N.D. Cal. Mar. 6, 2016) ................................ 11

*Dennis v. Kellogg Co.*, 697 F.3d 858 (9th Cir. 2013) ............................................................. 13

*Dent v. ITC Service Group*, No. 2:12-CV-00009-JCM-VCF, 2013 WL 5437331
    (D. Nev. Sept. 27, 2013) ........................................................................................................ 13

*Dowdell v. City of Apopka*, 698 F.2d 1181 (11th Cir. 1983) .................................................. 11

*Hendricks v. Total Quality Logistics*, 292 F.R.D. 529 (S.D. Ohio 2013) ................................. 3

*In re Bluetooth Headset Prods. Liability Litigation*, 654 F.3d 935 (9th Cir. 2011) ................... 5

*In re Farmers Insurance Exchange,* 481 F.3d 1119 (9th Cir. 2007) ........................................ 9

*In re Novartis Wage and Hour Litigation*, 611 F.3d 141 (2d Cir. 2010) ................................... 9

*Laguna v. Coverall North America, Inc.*, 753 F.3d 918 (9th Cir. 2014) ................................... 8

*Lynn's Food Stores, Inc., v. U.S.*, 679 F.2d 1350 (11th Cir. 1982) ..................................... 2, 6

*Mojica v. Compass Group*, 13-cv-1754 (C.D. Cal. Mar. 14, 2014) ........................................... 8

*National Rural Telecommunications Cooperative v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) ............................................................................................. 9

*Ogbuehi v. Comcast of California*, 2015 WL 3622999 (E.D. Cal. June 15, 2015) ................. 12

*O'Connor v. Uber Technologies*, 2016 WL 4398271 (N.D. Cal. Aug. 18, 2016) ................... 13

*O'Sullivan v. AMN Services, Inc.*, 12-cv-2125 (N.D. Cal. Feb. 7, 2014) .................................. 8

*Pierce v. Rosetta Stone, Ltd.*, 2013 WL 5402120 (N.D.Cal. Sept. 26, 2013) .......................... 11

*Rodriguez v. SGLC Inc.*, 2014 WL 229221 (E.D. Cal. Jan. 17, 2014) ............................. 2, 6, 7

*Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009) ......................................... 7

*Rojas v. Zaninovich,* 2015 WL 3657172 (E.D. Cal. June 11, 2015) ......................................... 8

*Romero v. Producers Dairy Foods, Inc.*, 2007 WL 3492841 (E.D. Cal. Nov.14, 2007) ........... 7

*Rosales v. El Rancho Farms,* 2015 WL 4460918 (E.D. Cal. July 21, 2015) ........................ 7, 9

*Satchell v. Federal Express Corp.*, 2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) ................. 12

*Schiller v. Bridal, Inc.,* 2012 WL 2117001 (E.D. Cal. June 11, 2012) ...................................... 7

*Singer v. American Airlines FCU*, No. C 05-04961 JCS, 2006 WL 3093759
  (N.D. Cal. Oct. 30, 2006) ....................................................................................................... 8

*Staton v. Boeing*, 327 F.3d 938 (9th Cir. 2003) ..................................................................... 12

*Van Vranken v. Atlantic Richfield,* 901 F.Supp. 294 (N.D. Cal. 1995) ................................... 12

*Vasquez v. Coast Valley Roofing*, 266 F.R.D. 482 (E.D.Cal. 2010) ....................................... 10

*Viceral v. Mistras Group, Inc.,* 2016 WL 5907869 (N.D. Cal. Oct. 11, 2016) ........................ 13

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) ..........................................*passim*

**Statutes and Regulations**

29 U.S.C. § 256 ........................................................................................................................ 6

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Named Plaintiff Sean Mar, individually and on behalf of all current and former EMTs who opted to participate in the FLSA settlement, requests approval of the Parties' Amended Settlement Agreement. EMTs are and were employed by Defendant NAPA. EMTs allegedly shadow experienced managers for training and perform assigned tasks, including menial tasks such as stocking, placing orders, shipping orders, and cleaning. The case alleges EMTs were misclassified as exempt employees under the FLSA and California law, and denied overtime and other compensation. Defendant disputes the allegation, asserting white-collar exemptions.

Out of the 100 EMTs who fell within the class definition during the relevant period, 94 affirmatively accepted the Settlement, which provides both significant monetary recovery and reclassifies the EMT position to non-exempt. Plaintiff previously submitted a Motion for Settlement Approval (ECF No. 29) which this court denied based upon Plaintiff's request for attorneys' fees constituting one-third of the common fund. (ECF No. 36, 1:24-26). As such, the Parties amended the Settlement to provide that Plaintiff would request no more than one-quarter of the common fund in attorneys' fees. Terp Decl. ¶ 2; *id.*, Exhibit A, p. 46, Amendment Pursuant to Section 8.6 of Settlem. Agrmt., dated Jan. 20, 2017, submitted herewith. The Parties sent notice of the Amended Settlement by mail and email to those EMTs who had not opted into the case based on the original Settlement Agreement, and who were still eligible to recover, in light of the FLSA's ticking statute of limitations. Simon Decl. ¶ 4, Exhibits 1 & 2, Jan. 24, 2017 Notices. No additional EMT chose to participate. Simon Decl. ¶ 4.

As in the original Settlement Agreement, the Amended Settlement Agreement involves monetary relief in the non-reversionary amount of $775,000, plus the cost of settlement administration and the employer's share of payroll taxes (roughly $27,839). Terp Decl. ¶¶ 5, 6.[1] Under the Amended Settlement Agreement, the 94 Class Members who affirmatively opted

---

[1] This amount is 5% of the $556,774.10 being distributed, which is a very conservative estimate based upon Plaintiffs' Counsel's experience with similar settlements. Terp Decl. ¶ 6.

MP&A ISO UNOPPOSED MOTION FOR APPROVAL OF AMENDED SETTLEMENT;
Case No.: 2:15−CV−01405−MCE−AC, PAGE 1

into the case will receive an average of $5,923.13 from the common fund, which is $687.06 more per person than they would have received under the original Settlement Agreement. *Id.* ¶ 5 The Court has already found that a bona fide dispute in this case makes settlement of Plaintiff's claims appropriate. (ECF No. 36, 4:8-10). The Settlement's terms provide a "fair and reasonable resolution of a bona fide dispute." *Rodriguez v. SGLC Inc.*, 2014 WL 229221, at *1 (E.D. Cal. Jan. 17, 2014) (England, J.) (citing *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1355 (11th Cir. 1982)).

The Settlement also secured reclassification of the EMT position as non-exempt and overtime-eligible. Supplemental Thomas Decl. ¶ 3; Decl. of Janet M. Thomas (Thomas Decl.) ¶ 3, dated Aug. 25, 2016 (ECF No. 29-2); Terp Decl. ¶ 7; *id.* Exhibit A, Am. Settlem. Agrmt. ¶ 3.11; Decl. of Bryan J. Schwartz (Schwartz Decl.) ¶ 8, dated Aug. 31, 2016 (ECF No. 29-1); *Id.* at Exhibit 1, Settlem. Agrmt. ¶ 3.11. This change addresses the root issue of the case and provides significant monetary benefits to EMTs (overtime premiums) beyond the settlement payment. Terp Decl. ¶ 7; Supplemental Thomas Decl. ¶ 4. In particular, in just over eight months, already about $63,000 in overtime premiums have been paid that would not have been paid, absent this settlement. Supplemental Thomas Decl. ¶ 4. Extrapolating at the same rate, this suggests Defendants will pay approximately $458,068 in overtime during the first five years for non-exempt EMTs.[2]

Class Counsel believes the Amended Settlement Agreement provides an excellent result, given the risk, expense, complexity, and likely duration of further litigation. Terp Decl. ¶ 8; Schwartz Decl. ¶¶ 5, 12; *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 (9th Cir. 2002). Indeed, the Court's only objection to the original Settlement was that the fees sought were over the 25% benchmark, which has now been rectified. (ECF No. 36, 4:15-17); Terp Decl. ¶ 2; *id.*,

---

[2] July 1, 2016 (the date of reclassification) to March 9, 2017 (the date of this declaration) is 251 days. Dividing $63,000 by 251 days for a per day average, then multiplying that number (approx. $251) by 365 days, and then by five years produces $458,067.73. Terp Decl. ¶ 7.

Exhibit A, Am. Settlem. Agmt, p. 46. Indeed, conservatively estimating, the fee award sought is around 15% of the real financial value of the settlement.[3]

Accordingly, Plaintiff Mar respectfully requests this Court: grant final approval of the Amended Settlement Agreement; approve enhancement payments to the Named Plaintiff and the pre-settlement opt-ins plaintiffs; approve the benchmark-level attorneys' fees and modest costs in the Amended Settlement Agreement; approve the *cy pres* recipient; approve the PAGA allocation; and, enter the proposed judgment accordingly.

## II.   BACKGROUND

### A.   The Parties Litigated and Mediated Plaintiffs' Class and Collective Claims.

On July 1, 2015, Plaintiff filed a class and collective action on behalf of himself and other EMTs for wage and hour violations by NAPA. (ECF No. 1). In filing the case, Plaintiff's Counsel was confident in the merits of Plaintiff's claims, but recognized the scarcity of executive trainee misclassification case law. Terp Decl. ¶ 8. For example, when Plaintiff moved for conditional certification, Plaintiffs' counsel identified one case as directly on point as to certification of a similar class, *i.e. Hendricks v. Total Quality Logistics*, 292 F.R.D. 529 (S.D. Ohio 2013), but no cases in which the claimed exemption as to the trainees was fully adjudicated on the merits. Terp Decl. ¶ 8. *See* Mot. for Cond. Cert. (ECF No. 18, at p. 15:9-16).

The Parties exchanged formal and informal discovery, and Plaintiff's Counsel deposed Defendant's FRCP, Rule 30(b)(6) witness. Plaintiff's motion to conditionally certify a collective action of all EMTs required extensive research, drafting, and interviews, leading ultimately to supportive declarations. *See* Mot. for Cond. Cert. (ECF Nos. 18 & 18-3); Terp Decl. ¶ 8; Schwartz Decl. ¶¶ 2. 3, 9. Subsequently, the Parties agreed to private mediation. *Id.* ¶ 2. At a

---

[3]Twenty-five percent of $775,000 is $193,750 in fees sought. The estimated financial value of the settlement assuming just five years of overtime at present rates and a 5% employer's share of taxes from the net fund, and without factoring in the administration costs, is $775,000 + $458,068 + $27,839 = $1,260,907. The amount $193,750 divided by this figure is 0.1537. Thus, the fee award is approximately 15% of the real value of the settlement, based upon a conservative estimate. Terp. Decl. ¶ 7.

full-day mediation with a renowned mediator Jeffrey A. Ross, the Parties reached an agreement on the basic terms of a settlement. *Id.* ¶¶ 3, 4. For several additional months after the parties continued arms'-length negotiations over the details of the Settlement Agreement and its attachments. *Id.* ¶ 4; *Id.*, Exhibit 1, Settlem. Agmt.

### B. The Initial Settlement Agreement Achieved a Very High Opt-In Rate and a Valuable Reclassification.

The initial Settlement Agreement provided that NAPA would: deliver funds for a non-reversionary common fund totaling $775,000 for the participating class members; cover the cost of settlement administration and the employer's share of payroll taxes; and reclassify EMTs as non-exempt employees. *Id.* at ¶¶ 1.5, 1.12, 3.3, 3.10, 3.11. Plaintiff's Counsel would seek: an enhancement payment of $7,500 to the Named Plaintiff; an enhancement payment of $2,500 to each of the three pre-settlement Opt-ins; attorneys' fees of one-third of the common fund; and costs of $7,225.90. *Id.* at ¶¶ 3.4, 3.5; Schwartz Decl. ¶ 6; *id.* Exhibit 3. The Named Plaintiff and three pre-settlement Opt-ins waived a broader range of claims than the rest of the Collective Class, and EMTs not participating in the settlement waive no claims in connection with the Settlement. *Id.* at ¶¶ 7.2, 7.3, 7.4. The Parties agreed that $3,000 of the common fund would be allocated to PAGA penalties, 25% of which would be paid to any eligible California EMTs on a *pro rata* basis, with the remainder distributed to the appropriate state agency *Id.* at ¶ 3.6. The Parties agreed to a *cy pres* recipient, Legal Aid at Work. *Id.* at ¶¶ 3.8. 6.6.[4]

The Parties took extensive measures to provide notice to all class members. Nationwide, 94% of EMTs chose to participate in the FLSA Settlement. Decl. of Kelly Kratz, Principal at Dahl. Admin. (Kratz Decl.) ¶¶ 3-10, dated Aug. 31, 2016 (ECF No. 29-3); Schwartz Decl. ¶ 13; Thomas Decl. ¶¶ 4-8.

---

[4] The Settlement designates The Legal Aid Society – Employment Law Center as the *cy pres* recipient. The organization recently changed its name to Legal Aid at Work (https://legalaidatwork.org). Webb Decl. ¶ 3.

Since July 1, 2016, when Defendant reclassified the EMT position as non-exempt pursuant to the Settlement, Defendant has already paid its current EMTs more than $63,000.00 in overtime compensation. Supplemental Thomas Decl. ¶ 4. Assuming similar frequency of overtime pay going forward, the reclassification is likely to be worth over $450,000 over the next five years. Terp Decl. ¶ 7.

### C.  The Court Denied Plaintiffs' Initial Motion for Settlement Approval Based Upon Fees Requested Over the Ninth Circuit Benchmark.

On August 31, 2016, Plaintiffs filed the initial Motion for Settlement Approval. (ECF No. 29). In a January 6, 2017 Order, this Court denied the motion. (ECF No. 36). Despite finding that the Settlement resolved a bona fide dispute (*id.* at 4:8-10), the Order stated the initial Settlement Agreement's award to Plaintiff's attorneys of fees equal to one third of the gross settlement amount was "unreasonably high, rendering the settlement not sufficiently fair and reasonable to be approved . . . ." (*id.* at p. 1:24-26). The Court noted, "In the Ninth Circuit, 25% is considered the 'benchmark' for determining whether attorney's fees are reasonable when they are based on a percentage of the award." (*Id.* at p. 3:4-5 (citing *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011))). As to attorney's hourly billing rates, though undersigned counsel have been awarded considerably higher rates elsewhere, the Court explained that within the Eastern District for such a case, "rates of $425 per hour for principals and $225 per hour for associates are more appropriate" as compared with Plaintiff's Counsel's reported hourly fees used for the lodestar check. (*Id.* at p. 6:1-5).

### D.  The Amended Settlement Agreement Complies with the Court's Order.

On January 20, 2017, the Parties signed an "Amendment Pursuant to Section 8.6. of Settlement Agreement." Terp Decl. ¶ 2; *id.* Exhibit A, Am. Settlem. Agmt, p. 46. In accordance with the Court's Order, the Parties amended Section 3.4 to state "Defendant will not oppose Class Counsel's application to the Court for an award of up to one-quarter of the Total Gross Settlement Amount in attorneys' fees." *Id.* The Parties amended Section 3.4 to "provide 30 days' additional notice to any Class Member who did not agree to the original Settlement

Agreement who still has timely wage claims, to provide an opportunity to participate in the Agreement as modified, which is expected to give additional compensation" to participants. *Id.*

Thus, the terms of the Amended Settlement Agreement are identical to the initial Settlement Agreement save that: the Attorneys' fees request is for one-quarter of the gross-settlement fund rather than one-third; the allocation to each class member is commensurately larger; and eligible EMTs who did not previously opt in were given notice of the new, even-more-favorable terms. Terp Decl. ¶¶ 2, 5; *id.*, Exhibit A, Am. Settlem. Agmt.

On January 24, 2017, the Parties issued notices of the Amended Settlement Agreement to the two remaining potential class members who had not yet opted in to the case,[5] with a return deadline of February 23, 2017. Simon Decl. ¶ 4; *id.* Exhibits 1 & 2, Notices. The notices informed them that they would receive a larger minimum allocation than under the initial Settlement Agreement. *Id.* ¶ 4. The mailed notices were returned undeliverable; however, these two class members also received the notices at their last-known email addresses. *Id.* The two class members did not opt into this case. *Id.*

### III.  THE COURT SHOULD GRANT APPROVAL.

#### A.  The Legal Standard Favors Approval for a Fair and Reasonable Settlement of a Bona Fide Dispute.

In order to approve the settlement of FLSA claims proposed by an employer and employees, the Court must determine the settlement is a "fair and reasonable resolution of a bona fide dispute." *Lynn's Food*, 679 F.2d at 1355; *Rodriguez*, 2014 WL 229221, at *1. If the settlement reflects a "reasonable compromise over issues . . . actually in dispute," the Court should "approve the settlement in order to promote the policy of encouraging settlement." *Id.*

By its prior Order, this Court found the Parties' "disagreement over the application of the FLSA to EMTs sufficient to establish the existence of a bona fide dispute, making settlement

---

[5] The Parties discussed notifying the six individuals who had not previously opted in. Simon Decl. ¶ 3. Defendants informed Plaintiff's Counsel that the dates of employment for four of the six were outside of the FLSA statute of limitations under 29 U.S.C. § 256, as of January 2017. Simon Decl. ¶ 3.

of Plaintiff's claims appropriate." (ECF No. 36, at 4:8-10). The Court's finding favors approval.

### B. The Requested Attorneys' Fees Are Appropriate.

By its prior Order, the Court did not appear to find fault with any of the material terms of the settlement, except for Plaintiff's request for attorneys' fees of one-third of the common fund. Plaintiffs now seek attorneys' fees of one-fourth of the common fund, which is the Ninth Circuit's benchmark fee award in a case like this. *Adoma v. Univ. of Phoenix*, 913 F. Supp. 2d 964, 981 (E.D. Cal. 2012).[6]

The Court should award the 25% of the common fund sought based upon: "(1) the results achieved; (2) the risk of litigation; (3) the skill required; (4) the quality of work performed; (5) the contingent nature of the fee and the financial burden; and (6) the awards made in similar cases." *Barbosa,* 297 F.R.D. at 449 (citing *Vizcaino*, 290 F.3d at 1047).

#### 1) The Result Obtained is Excellent.

The non-reversionary settlement amount of $775,000 is favorable result for the 94 class members, who can expect to receive a net average payment of $5,923.13 (a gross average payment of $8,244.68). The Settlement represents a high percentage of the amount class members could expect for full relief of their wage claims. *See* Schwartz Decl. ¶ 6 (87.6% of full relief, assuming class members worked five hours of overtime per week and not including interest and penalties); *see Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 955 (9th Cir. 2009)); *see also* the discussion in the original settlement approval motion (ECF No. 29, p. 19 of 27, lines 16-22). *Compare Rosales v. El Rancho Farms,* 2015 WL 4460918, at *14 (E.D. Cal. July

---

[6] Frequently, courts award a higher percentage of the common fund than the benchmark 25%, particularly in wage-hour class action settlements without a mega-fund. *See, e.g., Rodriguez*, 2014 WL 229221, at *2 (approving attorneys' fees in an FLSA settlement of 34% of the common fund); *Barbosa v. Cargill Meat Sol. Corp.,* 297 F.R.D. 431, 450 (E.D. Cal. 2013) (awarding attorneys' fees of one third of the common fund); *Romero v. Producers Dairy Foods, Inc.*, 2007 WL 3492841, at * 4 (E.D. Cal. Nov.14, 2007) (fee award of one third of common fund); *Schiller v. Bridal, Inc.,* 2012 WL 2117001, at *19 (E.D. Cal. June 11, 2012) (fee award of 32.1% of common fund); *Bond v. Ferguson Enterprises, Inc.*, 2011 WL 2648879, at *11 (E.D. Cal. June 30, 2011) (fee award of 30% of the common fund).

21, 2015) (approving a settlement with a class payment that was roughly one-quarter of the maximum potential recovery); *Rojas v. Zaninovich,* 2015 WL 3657172, at *12 (E.D. Cal. June 11, 2015) (approving a settlement with a class payment of roughly one-half of the maximum potential recovery).

Here, the net average payment of $5,923.13 is much more favorable than other wage and hour class action settlements approved by Ninth Circuit courts, which have provided just hundreds of dollars per class member. *See* Schwartz Decl., Exhibit 6 (ECF No. 29-1, pp. 91-100) (*Mojica v. Compass Grp.*, 13-cv-1754 (C.D. Cal., Mar. 14, 2014) ($144.36/class member); Exhibit 7 (ECF No. 29-2, pp. 102-109) (*O'Sullivan v. AMN Servs., Inc.*, 12-cv-2125 (N.D. Cal. Feb. 7, 2014) (less than 3% of full relief).

The value of the settlement to Collective Class Member is much greater than the cash payouts from the common fund, because it includes the employer's share of taxes (roughly $27,839), and administration costs, meaning Defendant's cash pay-out is well over $800,000. However, this does not account for a major portion of the relief obtained, which is injunctive, reclassifying the EMT position as non-exempt – as discussed above, EMTs have already received $63,000 in overtime and Plaintiff estimates EMTs will be paid over $450,000 in overtime in the first five years after the change. *See e.g., Vizcaino*, 290 F.3d at 1048-50 (finding that "Non-monetary benefits," such as causing the defendant "to change its personnel classification practices," are "relevant" in evaluating a class settlement). *See also Laguna v. Coverall N. Am., Inc.*, 753 F.3d 918, 922-23 (9th Cir. 2014) (vacated on other grounds) (approving fee larger than settlement itself, noting that when injunctive relief was taken into account, the fees as a percentage of the recovery were reasonable); *Singer v. Am. Airlines FCU*, No. C 05-04961 JCS, 2006 WL 3093759, at *4 (N.D. Cal. Oct. 30, 2006) (injunctive relief obtained for class helps justify fees and plaintiffs' enhancements).

The strength of the result is highlighted by Class Members' response, as 94% of Class Members chose to opt into the case. In doing so, Plaintiff and the Collective Class affirmatively accepted the attorneys' fees provided for in the Settlement. The Named Plaintiff agreed that attorneys' fees would be measured as more than one-quarter of a settlement. Schwartz Decl.

¶ 7; Mar Decl. ¶ 3. Moreover, each Plaintiff agreed to his or her individual settlement amount and agreed that Plaintiffs' Counsel could seek one third of the total settlement amount ($258,333.33) in fees. Schwartz Decl. ¶¶ 7, 11; Notice ¶ 3.4. *See Ambrosino v. Home Depot U.S.A., Inc.*, Civil No. 11cv1319 L(MDD), 2014 WL 3924609, at *2 (S.D. Cal. 2014) (finding 33.3% reasonable in an FLSA settlement where "each plaintiff approved the amount").

This result supports the requested attorneys' fee award.

### 2) Risk, Expense, Complexity, and Likely Duration of Further Litigation.

Approval of the settlement is "preferable to lengthy and expensive litigation with uncertain results" for Class Members. *Rosales v. Rancho Farms*, 2015 WL 4460918 at *14 (E.D. Cal. 2015); *Nat'l Rural Telecomms. Coop. v. DIRECTTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004).

While Plaintiff's counsel felt strongly about the merits of the claims and the prospects of overcoming Defendant's defenses, the case law is sparse regarding executive trainee FLSA claims, and FLSA misclassification cases always have considerable uncertainty, both as to final certification and as to the merits. As noted in the original Motion for Settlement Approval (ECF No. 29, p. 18 of 27, lines 6-14), in the *Novartis Wage and Hour Litigation*, after winning on appeal (611 F.3d 141 (2d Cir. 2010)), the pharmaceutical sales representative plaintiffs settled their misclassification action for $99 million – and were granted final approval (Terp. Decl., Exhibit D, Novartis Approval Order), less than a month before *Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156 (2012) (abrogating *In re Novartis Wage and Hour Litig.*), which found this position exempt under the FLSA, and would have left the *Novartis* plaintiffs empty-handed. *See also, e.g., In re Farmers Insurance Exchange*, 481 F.3d 1119, 1132 (9th Cir. 2007) (reversing a $52.5 million plaintiffs' verdict, finding claims adjusters exempt under the FLSA).

Further wage and hour trials are complex, expensive, and unpredictable. Even if Plaintiff were to obtain certification, defeat decertification, and prevail on liability, NAPA might appeal, extending the resolution of the claims for hears. In the original approval motion, Plaintiff

described the litigation against U.S. Bank by business banking officers alleging misclassification – which has been ongoing since 2001 and is still far from complete (an amended complaint was filed the day before the instant motion). (*See* ECF No. 29, at p. 18 of 27, lines 14-24, discussing *Alila-Katita v. U.S. Bank, NA,* 16-cv-3950 (N.D. Cal.)). Judicial resolution would also require considerable expenditures of resources for all Parties and the Court. There is no expedited route to payment for Class Members absent this Settlement, which provides for prompt and substantial relief. *Barbosa,* 297 F.R.D. at 446.

These risks favor approving the benchmark award.

### 3) Plaintiff's Counsel Bore the Risk In Bringing This Case.

The risky, contingent nature of this litigation makes the fees appropriate. Plaintiffs' Counsel took this case on a contingency basis, and will have spent more than 730 hours on the case (assuming a modest 15 additional hours seeing the matter through final disbursements and settlement administration), and alone bore the financial risk litigation would be unsuccessful. Schwartz Decl. ¶ 6; Terp Decl. ¶ 8. Counsel received no payment for their time, nor reimbursement for out-of-pocket costs during litigation, favoring the requested fee award now. *Id. See, e.g. Vasquez v. Coast Valley Roofing*, 266 F.R.D. 482, 492 (E.D.Cal. 2010) (citing *Vizcaino*, 290 F.3d at 1048-50).

### 4) The Lodestar Cross-Check Favors the Requested Award.

Courts may use the lodestar method "as a 'cross check' to assess the reasonableness of the percentage award." *Barbosa*, 297 F.R.D. at 448 (citing *Vizcaino*, 290 F.3d at 1050-51). Even if it were necessary to evaluate Plaintiff's Counsel's lodestar in a FLSA settlement, where each participant has specifically opted into and agreed to the fees sought, a lodestar analysis justifies the fees requested.

In denying Plaintiff's initial motion to compel, the Court indicated that within the Eastern District, "rates of $425 per hour for principals and $225 per hour for associates are more appropriate" as compared with Plaintiff's Counsel's customary hourly fees. (ECF No. 36, at p. 6:1-5). Based even upon the Court's approved rates, the lodestar favors the 25% fee award sought.

Using these rates, Plaintiff's counsel's lodestar is $194,812.50 for 734.40 hours (building in just 15 hours of time to take this matter to completion, and through administration). Terp Decl. ¶ 12; *id.* at Exhibit B. At the Court's rates, then Plaintiff's lodestar is approximately the same as the fee award requested, $193,750 (a multiplier of less than 0.99). *Id.* ¶ 12. This multiplier is well within the range of reasonableness approved by Ninth Circuit and its District Courts. *Vizcaino*, 290 F.3d at 1051 n. 6 (finding that multiples ranging from 1.0-4.0 are frequently awarded in common fund cases, with slightly over half of the cases surveyed awarding multiples in the 1.5-3.0 range); *Adoma*, 913 F. Supp. 2d at 984 (approving 1.45 multiplier). A "requested fee award [in a wage and hour class action that] results in a so-called negative multiplier, suggest[s] that the percentage of the fund is reasonable and fair." *Covillo v. Specialties Café*, 2014 WL 954516, at *7 (N.D. Cal. Mar. 6, 2016) (awarding fees equal to 30% of the common fund, where lodestar was negative); *Pierce v. Rosetta Stone, Ltd.*, 2013 WL 5402120, at *6 (N.D.Cal. Sept. 26, 2013) (awarding fees equal to 25% of the common fund, where lodestar was negative). The lodestar cross-check favors the award requested.

### C. The Requested Costs Sought Are Appropriate.

Plaintiff may request the Court approve out-of-pocket costs typically billed to a client that are not part of a law firm's overhead. *See Dowdell v. City of Apopka*, 698 F.2d 1181, 1190 (11th Cir. 1983) ("[E]xpenses such as supplemental secretarial costs, copying, telephone costs and necessary travel, are integrally related to the work of an attorney and the[ir] services . . . ."). The categories of costs sought by Plaintiff are typically billed to a client. *See* Terp Decl. ¶ 10; Schwartz Decl. ¶ 16.

In both the initial and the instant Motion for Settlement Approval, Plaintiff seeks costs of $7,225.90. As of filing Plaintiff's current costs are slightly more than the amount Plaintiff requests. *See* Terp Decl. ¶ 10. These modest costs encompass FRCP 30(b)(6) deposition costs including travel costs, mediation costs, legal research expenses, copying and other ordinary expenses. *Id.* By declarations of Plaintiff's counsel and exhibits thereto, these costs were adequately documented and reasonably incurred. *See id.*; *id.* at Exhibits C & D.

The costs requested are reasonable also as a proportion of the common fund – less than one percent. *See, e.g., Ogbuehi v. Comcast of Cal.*, 2015 WL 3622999, at **12-13 (E.D. Cal. June 15, 2015) (Mueller, M.J.) (granting over $8,000 in costs for $100,000 settlement). The Court should award the costs requested.

### D. The Enhancements Requested are Appropriate.

The Court expressed no reservations about the modest enhancements for the named Plaintiff ($7,500) and original opt-ins ($2,500) who stepped forward to secure this result for their colleagues. Accordingly, Plaintiff incorporates the arguments made in the original Motion for Settlement Approval. (ECF No. 29, at pp. 22-24 of 27, Section V.E of the motion (citing, *inter alia, Staton v. Boeing,* 327 F.3d 938, 977 (9th Cir. 2003) (approving service awards); *Van Vranken v. Atlantic Richfield,* 901 F.Supp. 294, 299 (N.D. Cal. 1995) ($50,000 to lead plaintiff as enhancement; listing factors, all of which are present here, as discussed in the original approval motion)). *See also* Schwartz Decl. ¶ 9 (valuable contributions of Plaintiff and opt-ins which led to successful outcome, including declarations in support of conditional certification, assistance during mediation, etc.); Decl. of Sean Mar ("Mar Decl.") (ECF No. 29-4) (spent 50-60 hours on litigation on a wide range of tasks; has feared retaliation). *See generally Asare v. Change Grp. of N.Y., Inc.*, 2013 WL 6144764, at *15 (S.D.N.Y. Nov. 18, 2013) (plaintiffs "faced the risk that new employers would learn that they were class representatives . . . against their former employer and take adverse action against them. . . .[E]ach time they change jobs, they will risk retaliation in the hiring process.").

Certainly Plaintiff Mar did more than any other class member to contribute to this result, stepping forward on his own to seek FLSA compensation for his fellow EMTs, attending the full mediation, providing evidence, multiple declarations, consulting with counsel throughout the process. Mar Decl. (ECF No. 29-4) His case could not have succeeded, it is likely, without several colleagues also providing supporting declarations, also helped counsel to understand the evidence, and showed that the scheme was consistent throughout the country and that other EMTs wanted it remedied. *See, e.g., Satchell v. Fed. Exp. Corp.*, 2007

WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) ($5,000 awards to participants other than named Plaintiff).

The Court should award the Plaintiff and opt-ins for their efforts and the consideration provided for their more expansive, general releases. *See, e.g., Dent v. ITC Serv. Group*, No. 2:12-CV-00009-JCM-VCF, 2013 WL 5437331, at *4 (D. Nev. Sept. 27, 2013) (approving $15,000 enhancement award out of wage and hour settlement, recognizing that class representative provided general release not provided by other class members).

### E. The Requested *Cy Pres* Beneficiary is Appropriate.

Legal Aid at Work meets the *Dennis v. Kellogg Co.*, 697 F.3d 858, 865 (9th Cir. 2013) test, "that there be a driving nexus between the plaintiff class and the *cy pres* beneficiaries." The present case seeks to enforce California wage protections. Legal Aid at Work is the leading provider of direct legal services in employment law for low-wage workers in California. Schwartz Decl. ¶ 14; Webb Decl. ¶ 3. The Court should approve this beneficiary.

### F. The PAGA Allocation is Appropriate.

The Court should also approve the $3,000 allocation for PAGA claims. According to Defendant's data, only nine of the 94 class members had any PAGA eligibility (*i.e.,* they were California EMTs who worked at Defendant within a year of the suit being filed). Terp Decl. ¶ 13. During negotiations, counsel estimated the PAGA claims were worth less than $20,000, out of $884,385.33 non-penalty full relief for all claims (principally FLSA claims) (referenced in the Schwartz Decl., ¶6). *Id.* The $3,000 PAGA allocation (15% of a best-day estimate) is thus very robust compared to other approved settlements. *See, e.g., Viceral v. Mistras Grp., Inc.,* 2016 WL 5907869, at **8-9 (N.D. Cal. Oct. 11, 2016) (Chen, J.) (where PAGA claims represented only about 14% of potential verdict value of all claims, settlement equaling 0.15% of potential PAGA verdict value was reasonable; distinguishing *O'Connor v. Uber Techs.*, 2016 WL 4398271 (N.D. Cal. Aug. 18, 2016) (PAGA claims were over 50% of potential verdict value of all claims)).

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court grant final approval of the Amended Settlement Agreement, approve enhancement payments to the Named Plaintiff and the three original Opt-ins, approve the attorneys' fees and costs sought, approve the PAGA allocation and *cy pres* designee, and enter the proposed judgment.

DATED: March 9, 2016

BRYAN SCHWARTZ LAW
By: /s/ *Bryan J. Schwartz*
Bryan J. Schwartz (SBN 209903)
*Attorneys for Representative Plaintiff and the Class*